[No. 40455.   En Banc.   April 16, 1970.]

CANTEEN SERVICE, INC., *Appellant*, v. THE CITY OF SEATTLE, et al., *Respondents.**

*Riddell, Williams, Voorhees, Ivie & Bullitt,* for appellant.
*A. L. Newbould* and *E. Neal King,* for respondents.

PER CURIAM.—Canteen Service, Inc., is in the business of leasing coin operated mechanical music machines, commonly known as juke boxes, in the Seattle area. Asserting that sections 10.96.020 and 10.96.030 of the Seattle License Code,[1] as applied, violate the antimonopoly provisions of

*Reported in 467 P.2d 845.

[1]10.96.020 "Operator's license required—Fee. It is unlawful to own and exhibit, lease, rent or place with others, for use, play or operation in any public place or establishment, any coin operated mechanical music machine without a valid and subsisting 'Mechanical Music Machine Operator's License,' the fee for which is hereby fixed at two hundred and fifty dollars per year; provided, that the holder of a license for not more than one location issued for the year 1957, as provided in Section 10.96.010, may renew his license in such location at the fee provided for therein.

our state constitution and the due process provisions and equal protection provisions of our federal constitution, Can-

"No manufacturer of mechanical music machines, or representative of such manufacturer, and no holder of a mechanical music machine operator's or wholesale vendor's license who leases or rents to or places with others any mechanical music machine for use, play or operation in any public place, or any person financially interested in such licensed business, whether resident or nonresident, shall have any financial interest, direct or indirect, in the business of any licensed location; nor shall any such manufacturer, or manufacturer's representative, or holder of an operator's or wholesale vendor's license own any of the property upon which such licensed location conducts its business; nor shall any licensed location, under any arrangement whatsoever, conduct its business upon property in which any such manufacturer, or manufacturer's representative, or holder of an operator's or wholesale vendor's license has any interest; nor shall any such manufacturer, or manufacturer's representative, or holder of an operator's or wholesale vendor's license advance money or moneys worth, or make any gift, to any licensed location under any arrangement whatsoever; or in such connection shall any licensed location receive, under any arrangement whatsoever, any advance of money, moneys worth or gift; provided, that any licensee hereunder may operate mechanical music machines in locations on property or business owned by him during the year 1957 until he surrenders or fails to renew such license.

"Financial interest, direct or indirect, as used in this section, includes any interest whether by stock ownership, mortgage, lien, or through interlocking directors or otherwise.

"Not more than one mechanical music machine operator's license shall be issued for each ten thousand of the total population of the city, as shown by the last preceding state or federal census."

10.96.030 "Distributor's sublicenses required—Fee. It is unlawful for anyone to own and exhibit, lease, rent or place with others, for use, play or operation in any public place or establishment, any coin operated mechanical music machine without a valid and subsisting 'Mechanical Music Machine Sublicense' for each such machine, the fee for which is hereby fixed at fifteen dollars per year for each such machine issued after the effective date hereof, which mechanical music machine sublicense shall be in the form of a metal or plastic tag issued by the city comptroller and shall be valid only when attached to such music machine in a conspicuous place near an indelible printed, stamped or impressed statement containing the name and address of the owner and vendor or distributor of such machine.

"Not more than one hundred fifty mechanical music machine sublicenses shall be issued to any one operator; and no sublicense shall be transferred during the license year from the location to which said sublicense was issued without the consent by resolution of the city council; provided, that such limitations shall not apply to prevent the renewal of sublicenses issued for the year 1957 until the licensee surrenders or fails to renew the same."

teen filed this action for declaratory judgment and injunctive relief. The trial court entered a judgment of dismissal upon respondents' challenge to the sufficiency of the evidence. He ruled as a matter of law. Canteen appeals.

Our review of the record convinces us, as it did the trial court, that there is a fatal lack of substantiating evidence in support of Canteen's arguments. *See N. Fiorito Co. v. State,* 69 Wn.2d 616, 419 P.2d 586 (1966); *Rainier Ave. Corp. v. Seattle,* 76 Wn.2d 800, 459 P.2d 40 (1969). The crux of these arguments is that the ordinances, as applied, require the written consent of an entrenched, competing sublicensee before the operator of a store, tavern, restaurant or other business can replace the machines that it is using with machines of a competing sublicensee. Canteen has failed in its proof. The record shows that neither Canteen nor any other sublicensee has, during the 10 years the ordinance has been in effect, attempted to obtain municipal approval of a replacement sublicense without written consent of an established sublicensor. There is no evidence that such consent is, in fact, necessary. No such requirement appears in the terms of the ordinances.

Canteen contends that an effort to obtain approval without the written consent of existing sublicensees would have been futile and therefore was unnecessary. Two arguments are put forward in support of this contention. First, the fact that no sublicensee has made such an effort since the ordinances took effect is offered as proof that "those in the know" regard such efforts as futile. This argument is without merit. There is no history of futility to support a conclusion by Canteen or any other operator that such efforts would fail. Under these circumstances the conclusion suggested by Canteen is inappropriate. Next, Canteen argues that it was discouraged from proceeding to seek a transfer by the disapproval of an administrative official. Canteen's application, without the written consent of the existing sublicensee, was submitted to the licensing division of the city of Seattle. The director stated to Canteen that he did not want "the apple cart upset." The licensing division is

strictly administrative and has no discretionary function in these matters. Canteen could have taken the matter to the city council, which is the responsible body under the ordinances. They chose not to proceed further and now argue that such an effort would have been futile in light of the administrator's distaste. Again, no prior history or other evidence of futility is offered.

In *State v. Lundquist,* 60 Wn.2d 397, 401, 374 P.2d 246 (1962), we said:

> A person may not urge the unconstitutionality of an ordinance or statute unless he is harmfully affected by the particular feature of the ordinance or statute alleged to be an unreasonable exercise of the police power. A litigant who challenges the constitutionality of an ordinance must claim infringement of an interest peculiar and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the ordinance.

Canteen has failed to demonstrate that the written consent of the established sublicensee is a prerequisite to the transfer of location sublicenses. This failure is not excused by a bare assertion that an effort to obtain municipal approval without such consent would have been futile. No prima facie case has been established. Under these circumstances, the trial court was quite correct in dismissing the suit as a matter of law.

We do not reach the substance of Canteen's assertions that the ordinances in question, as written or applied, are unconstitutional.

Affirmed.